**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 08-**_____ |
| v. | : | DATE FILED: <u>December 11, 2008</u> |
| **ALEX KANAKARIS** | : | VIOLATIONS: |
| **RICHARD EPSTEIN** |   | 18 U.S.C. § 371 (conspiracy - 1 count) |
| | : | 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5 (securities fraud - 1 count) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |

**INDICTMENT**

**COUNT ONE**

**THE GRAND JURY CHARGES THAT:**

**BACKGROUND**

At all times material to this indictment:

1. Swedish Vegas, Inc. ("Swedish Vegas") was a Delaware corporation based in Arcadia, California, that described itself as "building a global brand name with a website, a line of microbrewed beer and a restaurant/bar concept." The company's stated plan was to "launch a series of themed eateries with an extensive beer and wine menu and reasonably priced lunches, dinners and appetizers." Swedish Vegas was publicly traded under the ticker symbol "SWDV" on the Pink OTC Markets Inc., an inter-dealer electronic quotation and trading system in the over-the-counter ("OTC") securities market commonly referred to as the "Pink Sheets."

2. Defendants ALEX KANAKARIS and RICHARD EPSTEIN were significant investors in Swedish Vegas stock. They claimed to control the majority of Swedish

Vegas stock and to have access to inside information about the company including non-public press releases and shareholder lists.

3. The United States Securities and Exchange Commission (the "SEC") was an independent agency of the United States which was charged by law with the duty of protecting investors by regulating and monitoring, among other things, the purchase and sale of publicly traded securities. One of the national securities markets regulated by the SEC was the Pink Sheets.

## THE CONSPIRACY

4. From in or about June 2008 through in or about July 2008, in the Eastern District of Pennsylvania, and elsewhere, defendants

**ALEX KANAKARIS and
RICHARD EPSTEIN**

conspired and agreed, together and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and the facilities of national securities exchanges, use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in connection with the purchase and sale of a security, in violation of Title 15, United

States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## MANNER AND MEANS

5. It was a part of the conspiracy that defendants ALEX KANAKARIS and RICHARD EPSTEIN, and their co-conspirators, sought to artificially inflate the price of Swedish Vegas stock by causing manipulative market activity in Swedish Vegas stock that was designed to appear to be the product of free and fair market forces. They did this in various ways, including the following:

   a. Agreeing to engage in manipulative and deceptive securities transactions to artificially increase the price of Swedish Vegas stock.

   b. Entering into illegal agreements to orchestrate their trading activity to create the false impression of market demand for Swedish Vegas stock.

   c. Coordinating trading activity with issuing Swedish Vegas press releases to provide a false pretext for the increased trading volume in Swedish Vegas stock.

   d. Agreeing to secretly bribe individuals to cause buying in Swedish Vegas stock, including brokers who would cause their retail customers to buy and hold Swedish Vegas stock.

## OVERT ACTS

6. In furtherance of the conspiracy and to accomplish its objects, defendants ALEX KANAKARIS and RICHARD EPSTEIN, and their co-conspirators committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

      a. On or about June 12, 2008, defendant KANAKARIS spoke on the telephone with Eduardo Rodriguez, charged elsewhere, and an individual who was secretly cooperating with the government (identified here as the "CW") to discuss a deal to manipulate Swedish Vegas stock. During this call, defendant KANAKARIS agreed to provide the CW with Swedish Vegas shareholder lists and Swedish Vegas press releases prior to their public release. Defendant KANAKARIS said that he controlled virtually all of the shares of Swedish Vegas stock that could be traded and agreed to pay the CW and Rodriguez a 20-percent kickback for the Swedish Vegas stock they caused to be bought and held. Defendant KANAKARIS told Rodriguez and the CW that he wanted them to buy as much stock as possible and to make the stock price "fly."

      b. On or about June 13, 2008, defendants KANAKARIS and EPSTEIN caused approximately $15,000 to be wired to an account controlled by Rodriguez as advance payment for purchases in Swedish Vegas stock.

      c. On or about June 13, 2008, Rodriguez wired approximately $7,500 to an account that he believed was controlled by the CW but which actually was an undercover account of the Federal Bureau of Investigation ("FBI") in Philadelphia, Pennsylvania.

      d. On or about June 13, 2008, defendant KANAKARIS emailed to Rodriguez and the CW a Swedish Vegas press release that was issued later that day. Defendant KANAKARIS said in the email that he would also send them the next Swedish Vegas press release before it was issued publicly.

    e. On or about June 16, 2008, defendant KANAKARIS spoke to the CW on the telephone and told him that he wanted the buying program in Swedish Vegas stock to begin on the following day.

    f. On or about June 17, 2008, defendant EPSTEIN spoke to Rodriguez on the telephone and said that defendant EPSTEIN had provided the kickback money and wanted buying done immediately in Swedish Vegas stock or Rodriguez should return the payment.

    g. On or about June 27, 2008, defendant KANAKARIS spoke on the telephone with the CW and complained that defendant EPSTEIN had wired a payment of $15,000 to Rodriguez for the CW to begin the buying program in Swedish Vegas stock, but that the buying had not occurred yet.  Defendant KANAKARIS urged the CW to get the buying program started as soon as possible.

    h. On or about June 30, 2008, at approximately 11:30 a.m., defendant KANAKARIS spoke on the telephone with the CW about the buying program in Swedish Vegas stock.  The CW told defendant KANAKARIS that he had already begun to bribe the brokers who were going to buy the stock and "park" it in their clients' accounts.  Defendant KANAKARIS complained about problems with Rodriguez and said that defendant KANAKARIS would pay the CW 20 percent for the artificial buying activity in Swedish Vegas stock.

    i. On or about June 30, 2008, at approximately 3:00 p.m., defendant RICHARD EPSTEIN spoke on the telephone with the CW and discussed the buying program in Swedish Vegas stock.  Defendant EPSTEIN reiterated that he had paid for $50,000 in buying activity in Swedish Vegas stock and that he was upset that the buying had not yet occurred.

Defendant EPSTEIN said that he wanted the buying to begin and, to avoid scrutiny, the CW should buy the shares of stock incrementally rather than all at once. Defendant EPSTEIN also said that if the buying program in Swedish Vegas stock were successful, the CW could engage with him and defendant KANAKARIS in similar manipulation schemes in other stocks.

j.   On or about July 2, 2008, defendants KANAKARIS and EPSTEIN discussed with the CW issuing press releases to coincide with the buying program in Swedish Vegas stock. Defendant KANAKARIS said that the press releases would justify the increased volume in the stock and would help them avoid regulatory scrutiny. Defendant KANAKARIS said that this buying program would "jump start" the price of Swedish Vegas stock.

k.   On or about July 21, 2008, defendant KANAKARIS emailed the CW a Swedish Vegas press release that was to be made public on July 22, 2008 in conjunction with the CW's buying activity in Swedish Vegas stock.

l.   On or about July 22, 2008, Swedish Vegas issued the press release that defendant KANAKARIS had sent to the CW the day before.

m.   On or about July 22, 2008, the CW caused purported retail purchases to be made of approximately 125,000 shares of Swedish Vegas stock for approximately 4 cents per share for a total of approximately $5,000. Those trades were settled using undercover FBI funds.

n.   On or about July 23, 2008, defendant KANAKARIS and the CW discussed the impact on their securities fraud scheme of the SEC halting trading in Swedish Vegas stock.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.    Paragraphs 1 through 3, 5 and 6 of Count One are incorporated here.

    2.    From in or about June 2008 through in or about July 2008, in the Eastern District of Pennsylvania, and elsewhere, defendants

**ALEX KANAKARIS and
RICHARD EPSTEIN**

willfully and knowingly, by the use of the means and instrumentalities of interstate commerce and the facilities of national securities exchanges, directly and indirectly, used and employed manipulative and deceptive devices and contrivances, and aided and abetted the use and employment of manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons in connection with purchases and sales of Swedish Vegas stock.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

**A TRUE BILL:**

_____
**GRAND JURY FOREPERSON**

_____
**LAURIE MAGID**
**Acting United States Attorney**